UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHAWN LACOUR                                    CIVIL ACTION

VERSUS                                          NUMBER: 05-2547

N. BURL CAIN, WARDEN,                           SECTION: "B"(5)
LOUISIANA STATE PENITENTIARY

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Shawn LaCour, the State's response thereto, and the parties' various traverses and supplemental briefs. (Rec. docs. 3, 5, 8, 10, 11, 12, 14). Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that LaCour's petition be dismissed with prejudice.

Petitioner LaCour is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On January 25, 2001, LaCour was found guilty of one

count of aggravated rape, two counts of armed robbery, three counts of aggravated burglary, and one count of sexual battery after trial, by jury, in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana.  On February 12, 2001, LaCour was sentenced to a prison term of life as to the rape count, ninety-nine years as to each of the armed robbery counts, thirty years as to the each of the burglary counts, and ten years as to the sexual battery count.[1]/

LaCour directly appealed his conviction and sentences to the Louisiana Fifth Circuit Court of Appeal, arguing that the offenses on which he had been tried were improperly joined and that he evidence presented by the State was insufficient to support the jury's finding of guilt.  On January 15, 2002, the Louisiana Fifth Circuit affirmed LaCour's conviction and sentences but remanded the matter to the trial court with directions to inform LaCour of the applicable sex offender registration requirements.  State v. LaCour, 810 So.2d 588 (La. App. 4th Cir. 2002)(table).  Writs were subsequently denied by the Louisiana Supreme Court on January 31, 2003.  State v. LaCour, 836 So.2d 60 (La. 2003).

On January 30, 2003, the day before the Louisiana Supreme

---

[1]/ LaCour had a previous conviction for attempted second degree murder but the State chose not to seek an enhancement of his sentence under LSA-15:529.1.

Court denied writs on LaCour's direct appeal, he signed a post-conviction relief application ("PCRA") that was formally filed in the trial court on April 21, 2003. (St. ct. rec., vol. 1 of 12).[2] The grounds raised in the PCRA were: 1) discrimination in the selection of the grand jury foreperson; 2) ineffective assistance of counsel based on counsel's failure to present statistical evidence in support of the foregoing discrimination claim; and, 3) ineffective assistance of counsel based on counsel's failure to object to the prosecutor's use of peremptory challenges. (Id.). On April 24, 2003, the trial court issued an order directing LaCour to explain why he has not urged his discrimination claim in his direct criminal appeal despite having filed a pre-trial motion to quash the grand jury indictment. The trial court also denied LaCour's two ineffectiveness claims on the merits. (Id.). Citing Article 930.4 of the Louisiana Code of Criminal Procedure, the trial court denied post-conviction relief on the discrimination claim on May 29, 2003. (Id.). LaCour's subsequent "application for rehearing" was denied by the trial court on July 11, 2003. (Id.). From the latter rulings, LaCour took two separate writs to the Louisiana

_____

[2] Like many of his pleadings, the precise filing date of this PCRA is difficult to ascertain. While the uniform PCRA form bears a date of January 30, 2003, the certificate of service on LaCour's supporting memorandum was dated March 10, 2003 and the affidavit accompanying the PCRA was executed on April 7, 2003. (St. ct. rec., vol. 1 of 12).

Fifth Circuit which likewise denied relief. State v. LaCour, No. 03-KH-871 (La. App. 5th Cir. July 25, 2003)(unpublished order); State v. LaCour, No. 03-KH-731 (La. App. 5th Cir. July 9, 2003)(unpublished order). (St. ct. rec., vol. 12 of 12). Writs were subsequently denied by the Louisiana Supreme Court on October 8, 2004. State ex rel. LaCour v. State, 883 So.2d 1035 (La. 2004). The instant proceeding followed.

In the above-captioned petition filed pursuant to 28 U.S.C. §2254, Lacour presents seven claims for relief which he frames as follows:

1.  [w]hether petitioner was denied his right to the sixth and fourteenth amendments to due process of law and a fair trial when the trial court allowed petitioner to proceed to trial on multiple unrelated offenses which denied him the presumption of innocence?

2.  [w]hether the lower court's denial of motion to quash indictment due to grand jury discrimination without affording petitioner an evidentiary hearing to further litigate and present evidence in support of claim constituted an abuse of discretion?  The state court's adjudication of this claim was contrary to clearly established federal law as determined by the Supreme Court of the United States.

3.  [w]hether counsel rendered ineffective assistance in violation of the sixth and fourteenth amendment by failing to litigate and present any evidence to support allegation of discrimination in the grand jury selection process?

4.  [w]hether counsel was ineffective when he failed to object to he prosecutor's discriminatory use of peremptory challenges to strike blacks from the venue who were thus qualified to serve?

4

5.    [w]hether the state court's denial of petitioner's grand jury discrimination claim thus applying an inadequate state procedural bar constituted an abuse of discretion in violation of the United States Constitution? The state court's adjudication of this claim was contrary to clearly established federal law as determined by the Supreme Court of the United States.

6.    [w]hether petitioner's appellate counsel rendered ineffective assistance in violation of the sixth amendment by failing to raise grand jury discrimination issue on direct appeal thus abandoning claim which was objected to prior to trial?

7.    [w]hether the state court's denial of motion to produce public records was unreasonable determination of facts in light of evidence presented in court?

(Rec. doc. 3, p. 18).

In initially responding to LaCour's petition, the State argued that it was not timely-filed under 28 U.S.C. §2244(d).  That statute, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), now provides that state prisoners like LaCour have one year from the date that their convictions become final to timely seek federal habeas relief.  Under Fifth Circuit precedent, a prisoner's conviction becomes final when the delays for seeking further direct review have expired.  See Williams v. Cain, 217 F.3d 303, 308 (5th Cir. 2000).  In Williams, the prisoner had failed to apply for writs from the Louisiana Supreme Court within the thirty-day period prescribed by Louisiana Supreme Court Rule X, §5(a) following the intermediate appellate court's denial of relief.  Id. In making a timeliness determination

5

under §2244(d), the date on which a prisoner's writ application is "filed" is generally presumed to be the date on which he handed the application over to prison officials to be mailed to the particular court. <u>Causey v. Cain</u>, 450 F.3d 601 (5th Cir. 2006).

The State's untimeliness argument in the present case centers on the date that LaCour "filed" his writ application to the Louisiana Supreme Court on direct appeal. As noted earlier, the Louisiana Fifth Circuit affirmed LaCour's conviction on January 15, 2002. Pursuant to Louisiana Supreme Court Rule X, §5(a), LaCour had thirty days, or until February 14, 2002, within which to timely seek writs from the Louisiana Supreme Court. With the "mailbox rule" in mind, to be timely LaCour's writ application must have been tendered to prison officials to be mailed to the Louisiana Supreme Court on or before the latter date. A review of the state court record submitted by the respondent reveals that the envelope in which the writ application was mailed was postmarked on February 19, 2002 and the writ itself was formally filed on March 4, 2002, either date of which would have rendered it untimely under §2244(d). (St. ct. rec., vol. 12 of 12).

In his initial traverse to the State's response, LaCour asserted that he "... mailed his writ of review on February 12, 2002 in the morning through the United States Postal Service here at Angola. However, later that even[ing] Angola post office

6

returned petitioner's writ of review for insufficient funds."
(Rec. doc. 8, pp. 1-2).  LaCour's assertion notwithstanding, the
Court notes that the certificate of service on his writ application
is not dated February 12, 2002 or any earlier date but is dated
February 13, 2002.  (St. ct. rec., vol. 12 of 12).  This casts
suspicion on his claim of having tendered his writ application to
prison officials for mailing on February 12, 2002.

    After having his writ application returned to him on the
evening of February 12, 2002 due to "insufficient funds", LaCour
contends that he presented the application, along with the
necessary postage, to Classification Officer Rhonda Nettles for
mailing on February 14, 2002. (Rec. doc. 8, p. 2).  In support of
that contention, LaCour has provided the Court with a copy of a
form denominated as an "Inmate's Request for Legal/Indigent Mail".
(Rec. doc. 8, ex. A).  That form, which is dated February 14, 2002
and bears plaintiff's signature and that purporting to be Rhonda
Nettles', indicates that a "writ of review" to the Louisiana
Supreme Court was the piece of mail in question.  (Id.).  In
response to LaCour's contention, the State attached to its
supplemental response a letter form Angola's Assistant Director of
Classification/Main Prison in which he states that he had "...
reviewed inmate LaCour's classification file .." and "... [t]here
is no documentation indicating an employee received or mailed legal

7

mail for inmate LaCour on February 14, 2002." (Rec. doc. 10, attachment).

By way of a traverse to the State's supplemental response, plaintiff has challenged the representations made in the Assistant Director of Classification's letter, asserting that "... the reason there is nothing on file indicating legal mail was received or mailed for petitioner is because petitioner's writ was mailed through indigency. Angola only records incoming legal mail and outgoing legal mail 'provided it is certified.' Angola refuses to certify indigent legal mail, and petitioner was/is indigent, thus his only recourse was to mail his writ to the Supreme Court through indigency. Therefore, nothing appears on file indicating an employee received or mailed legal mail for petitioner on February 14, 2002." (Rec. doc. 11, pp. 2-3)(footnotes omitted). In support of his assertion, LaCour attaches to his traverse a computer printout from Angola reflecting the legal correspondence he received at that institution in 2002. (Rec. doc. 11, ex. 2). On that printout are some handwritten notes from Angola mailroom officials in which they explained to LaCour that "[w]e have a certified mail out on ... 2-19-02 that was mailed to the La. Supreme Court, 301 Loyola Ave., New Orleans, LA 70112. It matches the certified # above." (Id.). The printout itself reflects that a certified mail card bearing no. 70000520002183323707 was returned

8

back to Angola officials from the U.S. Postal Service on February 25, 2002. (<u>Id</u>.). That certified mail number matches that appearing on the copy of the envelope in which LaCour's writ application to the Louisiana Supreme Court was mailed. (St. ct. rec., vol. 12 of 12).

The weight of the foregoing evidence, the Court believes, leads to the conclusion that LaCour's writ application to the Louisiana Supreme Court was not tendered to Angola officials for mailing until February 19, 2002, thus rendering it untimely. Although LaCour initially claimed that he mailed the writ application on February 12, 2002, the certificate of service on the writ is dated February 13, 2002.  He then claimed that the application was returned to him on the evening of February 12, 2002 due to insufficient funds, a deficiency which he alleges he corrected when he re-tendered the writ, along with the necessary postage, to Officer Nettles on February 14, 2002.  That allegation is contradicted by the Assistant Director's letter in which he stated that there was no documentation in LaCour's file indicating that an Angola employee received or mailed legal mail for petitioner on February 14, 2002. In a later filing, LaCour attempted to explain the state of his classification file by alleging that his writ application was mailed through indigency, that Angola officials do not certify indigent prisoners' legal

mail, and that outgoing legal mail is only recorded if it is certified. LaCour's contention of having mailed the writ through indigency is at odds with his initial representation wherein he claimed that the application was tendered with sufficient postage. Furthermore, the envelope in which the writ was mailed has affixed to it sufficient postage stamps to cover its delivery and the mail was, in fact, sent certified. The very printout that LaCour himself provided to the Court bears a handwritten notation from Angola mailroom officials that a piece of certified mail to the Louisiana Supreme Court was mailed out on LaCour's behalf on February 19, 2002 and the "green card" reflecting its receipt was received back by Angola on February 25, 2002. The certified mail number on that receipt corresponds with that found on the envelope in which the writ application was mailed. These facts lead the Court to conclude that LaCour did not submit his writ application for mailing until February 19, 2002. However, by that time his conviction had become final by the operation of Louisiana Supreme Court Rule X, §5(a) and subsequent events did not alter that fact. When one cumulates the lengthy time periods that elapsed between the date that LaCour's conviction became final (i.e., February 14, 2002) and the date that he signed his application for post-conviction relief (i.e., January 30, 2003) and that between the date that the Louisiana Supreme Court denied his most recent writ

application (i.e., October 8, 2004) and the date that he signed his federal habeas petition (i.e., June 15, 2005), it is apparent that his petition is untimely under §2244(d).

In its initial response herein, the State alternatively argued that the claims for relief that LaCour labels as numbers two and six have not been exhausted in the state court system, thus requiring the dismissal of LaCour's petition as a "mixed" one (i.e., one containing both exhausted and unexhausted claims) and thereafter giving LaCour the option of returning to state court to exhaust all of his claims or amending his petition to delete his unexhausted claims. (Rec. doc. 5, pp. 12-15). In the two traverses that he has filed in this case, LaCour contended that his second and sixth claims have indeed been exhausted in the state court system. (Rec. docs. 8, p. 3; 11, pp. 4-5). Alternatively, LaCour asked that this federal habeas proceeding be stayed to allow him to return to state court to exhaust any presently unexhausted claims. (Rec. doc. 11, pp. 4-5). For its part, the State opposed LaCour's request for a stay as contrary to the objective of encouraging the finality of state court judgments and because of the procedural bar applicable to the two claims. (Rec. doc. 12, pp. 2-3). For the reasons that follow, the Court declines to stay this proceeding and to hold LaCour's second and sixth claims in abeyance.

11

"'Because granting a stay effectively excuses a petitioner's failure to present his claims first to state courts, stay and abeyance is only appropriate when the district court determines there is good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.'"  Neville v. Dretke, 423 F.3d 474, 479 (5th Cir. 2005)(quoting Rhines v. Weber, 544 U.S. 269, 277, 125 S.Ct. 1528, 1535 (2005)).

As noted earlier, in his writ application to the Louisiana Supreme Court on direct appeal, LaCour complained of the improper joinder of offenses and insufficient evidence to support his conviction.  In his subsequent PCRA, LaCour alleged that there had been discrimination in the selection of the grand jury foreperson and that he had been denied the effective assistance of counsel.  Ultimately, the trial court denied relief on the grand jury discrimination claim, finding it to be procedurally barred under Article 930.4(C) based on LaCour's failure to litigate said claim in his direct criminal appeal.  The trial court's ruling was affirmed by the Louisiana Fifth Circuit on July 25, 2003.  LaCour then took writs to the Louisiana Supreme Court and, in a supplement to his original application, he framed the issue for review as

"[w]hether the district court erred in denying petitioner's claim of grand jury discrimination and applying La.C.Cr.P. Art. 930.4(C) ..."

The second claim for relief that LaCour presents in this federal habeas proceeding is that "... the lower court's denial of [his] motion to quash [the] indictment due to grand jury discrimination without affording petitioner an evidentiary hearing to further litigate and present evidence in support of [that] claim constituted an abuse of discretion ..." This claim is significantly different from that which LaCour had presented in his second writ application to the Louisiana Supreme Court and which forms the basis for his fifth claim for relief herein. LaCour has thus failed to exhaust available state court remedies with respect to his second claim and the time for him to do so has expired under LSA-C.Cr.P. Art. 930.8 (establishing a two-year prescriptive period for state prisoners to seek post-conviction relief). That being the case, the Court is procedurally barred from considering that claim. Glover v. Cain, 128 F.3d, 900, 902 (5th Cir. 1997), cert. denied, 523 U.S. 1125, 118 S.Ct. 1811 (1998); Nobles v. Johnson, 127 F.3d 409, 420-23 (5th Cir. 1997), cert. denied, 523 U.S. 1139, 118 S.Ct. 1845 (1998); Sones v. Hargett, 61 F.3d 410, 416 (5th Cir. 1995). Only if LaCour could demonstrate cause and prejudice for his procedural default, or establish a fundamental miscarriage of

13

justice, would the Court be able to review the merits of his second claim.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565 (1991).

Resolution of this cause and prejudice inquiry, in turn, brings the Court to LaCour's sixth claim for relief.  In that claim, LaCour alleges that his "... appellate counsel rendered ineffective assistance ... by failing to raise [the] grand jury discrimination issue on direct appeal ..."  Although ineffective assistance of counsel can constitute cause sufficient to overcome a procedural bar, the ineffectiveness itself must rise to the level of a Sixth Amendment violation.  Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).  Moreover, because counsel's ineffectiveness in failing to preserve a claim for state court review will suffice as cause only if that ineffectiveness itself constitutes an independent constitutional violation, the allegation of ineffectiveness must have first been presented to and exhausted in the state court system like any other constitutional claim.  Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587 (2000).  On that score, in the supplement to his most recent writ application to the Louisiana Supreme Court, LaCour alleged that the trial court erred in finding his grand jury discrimination claim to be procedurally barred under Article 930.4.  However, he did not urge as a separate, distinct claim for relief that he was denied the

14

effective assistance of appellate counsel based on counsel's failure to raise the grand jury discrimination claim on direct appeal.[3]/ Just like his second claim herein, it would now be too late for LaCour to attempt to exhaust state court remedies in light of Article 930.8. <u>Glover</u>, <u>supra</u>; <u>Nobles</u>, <u>supra</u>; <u>Sones</u> <u>supra</u>. That being the case, the Court is likewise barred from considering the allegation of appellate counsel's alleged ineffectiveness, <u>Edwards</u>, 529 U.S. at 452-53, 120 S.Ct. at 1591-92, absent which petitioner fails to establish cause for the procedural default of his second claim for relief. Without a showing of cause, the Court need not consider the element of prejudice. <u>Murray v. Carrier</u>, 477 U.S. 478, 494-95, 106 S.Ct. 2639, 2649 (1986). And no colorable showing of actual innocence being made here, LaCour has not shown that the failure to entertain his second and sixth claims will result in a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750, 111 S.Ct. at 2565. Stay and abeyance is not appropriate here.

Notwithstanding its earlier timeliness determination under §2244(d), the Court will nevertheless now turn its attention to the

---

[3]/ In fact, by letter dated August 20, 2001, LaCour's appointed counsel provided petitioner with a copy of the appellate brief he had filed with the Louisiana Fifth Circuit and advised LaCour to pursue any ineffectiveness claims by way of a <u>pro</u> <u>se</u> supplemental appellate brief or through post-conviction proceedings. (St. ct. rec., vol. 12 of 12). The Louisiana Fifth Circuit did not rule on LaCour's appeal until January 15, 2002. <u>LaCour</u>, 810 So.2d 588.

claims that LaCour properly exhausted in the state court system. In his first claim for relief, LaCour contends that the seven offenses for which he was tried were unrelated and were thus improperly joined, thus denying him the presumption of innocence.

LaCour was charged and convicted of seven crimes stemming from five separate incidents that occurred over a two-week period. Petitioner was convicted of three counts of aggravated burglary, two counts of armed robbery, one count of aggravated rape, and one count of sexual battery.  Count five, an aggravated rape, occurred during the aggravated burglary of the same victim.  Count seven, sexual battery, stems from the armed robbery of the same victim. Prior to trial, the defense filed a motion to quash the indictment based on the alleged misjoinder of offenses, arguing that the crimes were "... separate and unrelated ... occurring several days apart", that some of the offenses were to be tried by different modes of trial, and that trying all the offenses together would result in prejudice.  (St. ct. rec., vol. 1 of 12).  After hearing arguments from the defense and the prosecution, the trial court denied the motion to quash, the case proceeded to trial, and LaCour was found guilty as charged.  On direct appeal to the Louisiana Fifth Circuit, that tribunal disposed of LaCour's misjoinder issue, ruling in pertinent part as follows:

[t]here were five incidents that occurred in the same are

of Jefferson Parish over a two-week period and resulted
in seven charges.  All five incidents occurred at night.
In all five incidents, there were two perpetrators with
either one or both armed with guns and wearing bandanas
who demanded money and jewelry from the victims.  In the
three aggravated burglary offenses and one of the armed
robbery offenses, the victims' phones were destroyed or
taken.  The defendant's obvious goal in each of the five
incidents was to take money and valuables from the
victims.  Furthermore, the aggravated rape offense was
part of the same transaction as one of the aggravated
burglaries and the sexual battery offense was part of the
same transaction as one of the armed robberies.  As such,
it appears the seven offenses are similar in character
and part of a common plan and, thus, were properly joined
in the same indictment pursuant to Article 493.

                *   *   *   *   *   *   *   *   *

In this case, while the five incidents share enough
similarities to make the joinder of the seven offenses
permissible, the facts of each offense are not identical
and are easily distinguishable from each other.  In the
first incident, defendant and a co-perpetrator kicked in
the front door of the victims' home, held the two victims
at gunpoint, ransacked the home, and demanded money and
other valuables.  In the second incident, a week and a
half later, defendant and a co-perpetrator approached the
two victims when they were returning to their apartment
complex, held them at gunpoint in the complex's mailroom
and robbed them of their money and jewelry.  On the same
day, in the third incident, defendant and a co-
perpetrator somehow managed to get into a home, held
several people at gunpoint, ransacked the home, and
demanded money and other valuables.  A few days later, in
the fourth incident, defendant and a co-perpetrator
forced their way into the victim's home, held the victim
and her date at gunpoint and raped the victim.  And, the
next day, in the fifth incident, defendant and a co-
perpetrator approached one of the victims in her
driveway, forced her inside her home at gunpoint, held
her and her husband at gunpoint, ransacked the home
looking for money and valuables, and sexually assaulted
her.

                                  17

The evidence against the defendant was not complex and was presented in an orderly fashion, incident by incident.  All of the witnesses, with the exception of Detective Darren Monie, testified to only one of the five incidents.   Detective Monie testified regarding the evidence collected against defendant from several of the incidents including the recovery of various stolen property.  Since the facts of each offense were not confusing or complex, there was little likelihood that the jury would have been confused by the [State] presenting evidence of the crimes together.  In the State's opening and closing statements, the prosecutor compartmentalized each separate count. The defense's closing argument likewise separated the evidence according to each count.  Additionally, the jury instructions clearly set forth the elements the State had to prove as to each count.  And, the verdict form had seven separate blank lines for the jury to write its verdict for each count.  Each blank line was clearly identified as to the incident and count to which it referred.  The trial court carefully explained the verdict form to the jury.  There is no indication the jury was confused by the various counts, or unable to understand or to segregate the seven charges and evidence relating to each.

State v. LaCour, No. 01-KA-602 (unpublished op. at pp. 9-13).

A review of the instructions that were read to the jury reveals that the jurors were duly charged that the defendant was presumed by law to be innocent and that the government bore the burden of proving the defendant's guilt beyond a reasonable doubt as to each and every element of each particular crime in question. (St. ct. rec., vol. 1 of 12).

To merit habeas relief on a claim of misjoinder of offenses, a petitioner must prove that his trial was rendered fundamentally

18

unfair.  <u>Alvarez v. Wainwright</u>, 607 F.2d 683, 685 (5th Cir. 1979).
The decision of whether to grant a severance of offenses is within
the sound discretion of the trial court and is required only in
cases of compelling prejudice.  <u>Breeland v. Blackburn</u>, 786 F.2d
1239, 1241 (5th Cir. 1986).  The burden of proving prejudice is a
heavy one and a trial judge's decision on whether or not to grant
a severance will rarely be disturbed by a reviewing court.  <u>Id</u>.

Having reviewed the record in its entirety, the Court is
unable to say that LaCour's trial was rendered fundamentally unfair
because the various offenses he committed were tried together.  The
offenses themselves were sufficiently similar to allow them to be
tried together and the trial judge organized the proceeding in such
a way as to minimize any confusion among the jurors.  Moreover, as
noted by the Louisiana Fifth Circuit in summarizing the evidence
before it, several of the victims were able to identify LaCour from
a photographic lineup that was compiled after his fingerprint was
obtained at one of the crime scenes.  A subsequent search of
LaCour's residence pursuant to a warrant revealed property that was
taken during the robberies and burglaries.  After being
apprehended, petitioner gave a taped statement in which he
inculpated himself in three of the five incidents.  In light of
such overwhelming evidence, the joinder of offenses for trial
purposes had only a negligible effect, if any, on the fairness of

19

the proceeding as a whole. The state courts' resolution of LaCour's misjoinder claim was not an unreasonable one and should not be disturbed here. 28 U.S.C. §2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 Ct. 1495, 1519 (2000).

In his third claim for relief, LaCour alleges that his trial counsel was ineffective for failing to litigate and present evidence to support the defense's allegation of discrimination in the selection of the grand jury.

Prior to trial, LaCour's attorney filed a "motion to quash on [the] basis of defective grand jury proceedings",[4] arguing therein that "[t]he jury commissioners failed to use sources for its selection which would reflect a representative cross-section of the community including all significant identifiable groups" and that "[t]he method for selecting the foreman is prejudicial." (St. ct. rec., vol. 1 of 12). In open court, defense counsel submitted the matter on its face and the motion was denied. (<u>Id</u>.). Thereafter, trial proceeded and LaCour was found guilty as charged.

To merit relief on a claim of ineffective assistance of counsel, a habeas Petitioner must satisfy the two-pronged test articulated by the Supreme Court in <u>Strickland v. Washington</u>, 466

---

[4] Even where no motion to quash is filed, the Supreme Court has held that such a failure does not overcome the presumption that counsel was effective. <u>See</u> <u>Michel v. State of Louisiana</u>, 350 U.S. 91, 100-01, 76 S.Ct. 158, 164 (1955).

U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984), by demonstrating that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  The burden of proving either element of <u>Strickland</u> is a heavy one and if proof of one element is lacking, the Court need not consider the other.  <u>Id</u>. at 697, 104 S.Ct. at 2069. Moreover, "[i]f the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail." <u>Green v. Lynaugh</u>, 868 F.2d 176, 177 (5th Cir.), <u>cert</u>. <u>denied</u>, 493 U.S. 831, 110 S.Ct. 102 (1989).  In evaluating allegations of ineffectiveness, the Court must be mindful of the strong presumption that counsel's actions or inactions were part of a sound trial strategy.  <u>Murray v. Maggio</u>, 736 F.2d 279, 282 (5th Cir. 1984); <u>Boyd v. Estelle</u>, 661 F.2d 388, 390 (5th Cir. 1981).

The statistical data and other proof submitted by Lacour does not pertain to the time period when he was indicted.  He also makes no showing of the percentage of African-Americans in the general or grand jury venires or the percentage of qualified African-Americans in the general population as a whole.  Because LaCour fails to present the Court with evidence which establishes a reasonable probability that the result of his trial would have been different had counsel proceeded in the manner he suggests, he has not proven

21

up that level of prejudice that _Strickland_ requires.  _Strickland_, 466 U.S. at 694, 104 S.Ct. at 2068.  Most importantly, however, the evidence against Lacour was so weighty that even if counsel had been successful in having the indictment quashed, the State would have undoubtedly sought and obtained a second indictment.  _Pickney v. Cain_, 337 F.3d 542, 545 (5th Cir. 2003); _Brown v. Cain_, 337 F.3d 546, 550 n. 5 (5th Cir. 2003), _cert_. _denied_, 540 U.S. 117, 124 S.Ct. 1065 (2004).  This claim is without merit.

LaCour's fourth claim for relief is another challenge to the effectiveness of his trial counsel.  Here, petitioner claims that counsel was ineffective for failing to object to the prosecutor's alleged discriminatory use of peremptory challenges.

When LaCour's trial proceedings resumed on the morning of January 23, 2001, Karen Bordelon, a petit jury panel member of the previous day, failed to appear to participate in the ongoing voir dire process.  (St. ct. rec., vol. 10 of 12).  When the trial judge dismissed Bordelon for cause based on her absence from the proceedings, defense counsel objected, arguing that the prospective juror "... may be a minority member of the community."  Ultimately, Bordelon did appear in court to apologize for her tardiness.  To all who were present, she appeared to be a Caucasian-American.  Questioning of the individual members of the panel followed.  One panel member, Tanya Williams, stated that she had been robbed seven

22

years earlier and that a friend of hers had been affected by a crime of violence.  When asked, T. Williams twice indicated that she would have a difficult time finding the defendant guilty of aggravated rape because of the mandatory life sentence the crime carried.  Only when she was asked a third time did T. Williams state that the mandatory life sentence would not be a problem if it was proven that LaCour committed the rape.  When the trial judge asked both sides for their challenges, the State initially argued that T. Williams was  subject to a challenge for cause but then acknowledged that she had likely been rehabilitated when asked the third time about the effect of the mandatory life sentence.  Accordingly, the State then used one of its peremptory challenge to strike T. Williams from the panel.  (_Id_.).

Another prospective juror, Evelyn Williams, stated that she had witnessed a murder three years earlier, had testified in that ensuing trial which resulted in a conviction, and that her young child had somehow been a victim in that crime.  She also indicated that her mother was employed by the Jefferson Parish Sheriff's Office as a correctional officer.  Ultimately, the State would use another one of its peremptory challenges on E. Williams.  Out of the thirteen individuals who were in this group of prospective jurors, the State used three of its peremptory challenges and the defense used four.  (_Id_.)

23

Proof of purposeful discrimination in the jury selection process is necessarily fact-intensive. <u>Batson v. Kentucky</u>, 476 U.S. 79, 96-97, 106 S.Ct. 1712, 1723 (1986). Because determinations of juror bias depend in great part on a trial judge's assessment of the potential juror's demeanor and credibility, the judge's decision on whether to accept or reject a prosecutor's justification for a peremptory strike is entitled to considerable deference. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338-40, 123 S.Ct. 1029, 1040-41 (2003). The burden of proving a discriminatory purpose in the jury selection process remains with the defense at all times. <u>Batson</u>, 476 U.S. at 94 n.18, 106 S.Ct. at 1721 n. 18.

In analyzing LaCour's fourth claim, the Court first notes that he provides no definitive proof of the races of the individuals who were prospective or actual jurors. Having objected to the release of Bordelon from the panel of prospective jurors as possibly being a member of a minority group, LaCour's counsel was obviously aware of the dictates of <u>Batson</u>. The State's subsequent striking of T. Williams was obviously done because of the doubts she harbored about the mandatory life sentence for rape and the Court discerns no valid basis upon which the defense could have prevailed on a <u>Batson</u> challenge as to her. As for prospective juror E. Williams, she stated during <u>voir</u> <u>dire</u> that her young child had somehow been

24

involved in a crime, that she herself had witnessed a murder and ultimately testified in that case in which a conviction was obtained, and that her mother worked in law enforcement. Given defense counsel's earlier proffered desire to obtain a jury that was representative of the community, counsel's decision not to challenge the striking of E. Williams was possibly a strategic choice to rid the jury of an individual who had law enforcement connections and who had personally been involved in criminal proceedings in which the outcome was favorable to the State. Moreover, the evidence against LaCour was so great that the result of his trial would have been no different had his attorney made the challenges that petitioner suggests. Green, 868 F.2d at 177. Finally, LaCour's fleeting reference to gender discrimination, based on statistics alone, fails to establish a prima facie case. See United States v. Branch, 989 F.2d 752, 755 (5th Cir. 1993)(quoting United States v. Moore, 895 F.2d 484, 485 (8th Cir. 1990)). The state courts' resolution of LaCour's ineffectiveness claim was not an unreasonable one.

In his fifth claim for relief, LaCour argues that the state courts applied an inadequate state procedural bar in refusing to consider the merits of the grand jury foreperson discrimination claim he had presented in his PCRA. The procedural bar at issue is Article 930.4(C) of the Louisiana Code of Criminal Procedure which

provides that claims that are inexcusably omitted from a defendant's direct criminal appeal are deemed waived in post-conviction proceedings. The state trial court, the last court to issue a reasoned opinion with respect to LaCour's discrimination claim, invoked just that bar which, contrary to petitioner's assertions, has been found to constitute an independent and adequate state procedural rule. Dickerson v. Cain, 2007 WL 433480 at *4 (E.D. La. 2007); Parker v. Cain, 2007 WL 275895 at *5-6 (E.D. La. 2007); Billard v. Warden, 2006 WL 3533078 at *2 (E.D. La. 2006); Bell v. Cain, 2002 WL 31002831 at *3-5 (E.D. La. 2002), cert. of app'y. denied, No. 02-30947 (5th Cir. July 30, 2003)(unpublished order). Although LaCour attempts to establish cause by arguing that his appellate counsel was ineffective for failing to raise the grand jury discrimination on direct appeal, that by itself is insufficient. Murray, 477 U.S. at 486-87, 106 S.Ct. at 2644-45; Edwards, 529 U.S. at 451, 120 S.Ct. at 1591. In the present case, LaCour's appellate counsel advised him some five months before the Louisiana Fifth Circuit had affirmed his conviction that the discrimination claim had not been urged on direct appeal. (See note 3, supra). Yet nothing suggests that LaCour sought leave to present said claim to the state appellate court via a pro se supplemental brief. Moreover, LaCour's claim of ineffective assistance of appellate counsel is procedurally barred

26

due to non-exhaustion.  Finally, the ruling complained of by LaCour occurred in the context of post-conviction relief proceedings, something states are not constitutionally required to provide at all.  Murray v. Giarratano, 492 U.S. 1, 8, 109 S.Ct. 2765, 2769 (1989); Pennsylvania v. Finley, 481 U.S. 551, 557, 107 S.Ct 1990, 1994 (1987); United States v. MacCollom, 426 U.S. 317, 323, 96 S.Ct. 2086, 2090-91 (1976); McCoy v. Lynaugh, 874 F.2d 954, 966 (5th Cir. 1989); Millard v. Lynaugh, 810 F.2d 1403, 1410 (5th Cir.), cert. denied, 484 U.S. 838, 108 S.Ct. 122 (1987).

LaCour's final claim for relief is that "... the state court's denial of [his] motion to produce public records was [an] unreasonable determination of [the] facts in light of [the] evidence presented in court ..."  (Rec. doc. 3, p. 18).  The appropriate inquiry, however, is whether there has been a violation of LaCour's constitutional rights.  28 U.S.C. §2254(a); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558 (1983); Bailey v. Procunier, 744 F.2d 1166, 1168 (5th Cir. 1984).

Petitioner contends that he was not provided with free copies of court records and other statistical data to support his claim of grand jury discrimination.  Although a criminal defendant pursuing a first appeal of right is entitled to those safeguards necessary to make the appeal adequate and effective, Evitts v. Lucey, 469 U.S. 387, 393-94, 105 S.Ct. 830, 834-35 (1985), a prisoner is not

thereafter entitled to a free copy of his state trial transcript and record to search for possible error upon which to base a petition for collateral relief in the future merely because he is indigent.  Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975); United States v. Herrera, 474 F.2d 1049, 1049-50 (5th Cir), cert. denied, 414 U.S. 861, 94 S.Ct. 77 (1973); Colbert v. Beto, 439 F.2d 1130, 1131 (5th Cir. 1971); Bennett v. United States, 437 F.2d 1210, 1211 (5th Cir. 1971); Walker v. United States, 424 F.2d 278, 278-79 (5th Cir. 1970).  While LaCour's request for documents to support his grand jury discrimination claim was somewhat limited and fairly particularized, the simple fact of the matter is that the evidence against him was so great, that he would have undoubtedly been re-tried even if he had prevailed on such a claim.  Pickney, 337 F.3d at 545; Brown, 337 F.3d at 550 n.5.  That being the case, no constitutional violation is apparent here.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the application for federal habeas corpus relief of Shawn LaCour be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en</u> <u>banc</u>).

New Orleans, Louisiana, this  13th  day of _____June_____, 2007.

_____
UNITED STATES MAGISTRATE JUDGE